IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-03173-M-RJ

| | |
|---|---|
| CARLOS HERNANDEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JAMIE BULLARD, et al., ) | |
| ) | |
| Defendants. ) | |

On July 18, 2024, Carlos Hernandez ("plaintiff"), a.k.a. Ra Saadi Lennox Hernandez El, a state inmate proceeding *pro se* and without prepayment of fees, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. See [D.E. 1, 2, 9].

First, the court DENIES plaintiff's premature motions for a writ of habeas corpus ad testificandum, Mot. [D.E. 8], to compel arbitration, Mot. [D.E. 15], and for default judgment, Mot. [D.E. 19]; see United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003) (courts "classify *pro se* pleadings from prisoners according to their contents, without regard to their captions").

Next, although plaintiff moves for copies, Mot. [D.E. 18], the court reminds him that a *pro se* litigant is responsible for maintaining his own legal records and he generally is not entitled to copies at Government expense. See United States v. Gallo, 849 F.2d 607, 1988 WL 60934, at *1 (4th Cir. May 31, 1988) (per curiam) (unpublished table decision). Instead, he may file a record system request through the Clerk's Office or use the Public Access to Court Electronic Records ("PACER") program. See 28 U.S.C.A. § 1914, Judicial Conference Schedule of Fees, at ¶4; http://www.nced.uscourts.gov/pdfs/CopyRequestInstructions.pdf (last visited Jan. 27, 2025).

The court now turns to the motion for injunctive relief. See Mot. [D.E. 12] (seeking, *inter alia*: that he is not "liable for – LATWANG – Trademark name – Juan Carlos Hernandez Navarrete – Opus # 1283638 as Surety for any reason whatsoever [sic]"; recognition of his status as a "private Moroccan American, Counsel, / Mu uŕ – Moor – American [sic]"; "recission - any 'void' contract – in equitable relief [sic]"; immediate release; and damages); see also Winestock, 340 F.3d at 203.

Plaintiff has not shown clear entitlement to the requested relief and the court DENIES the motion [D.E. 12]. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006) (requiring movant seeking a permanent injunction to demonstrate "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (4th Cir. 2009) (noting the Supreme Court has rejected the standard allowing a "plaintiff to demonstrate only a 'possibility' of irreparable harm because that standard was inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." (quotation omitted)), vacated on other grounds, 559 U.S. 1089 (2010), reissued in relevant part, 607 F.3d 355 (4th Cir. 2010) (per curiam); U.S. Dep't of Labor v. Wolf Run Mining Co., 452 F.3d 275, 281 n.1 (4th Cir. 2006) (applying same standards for preliminary injunction and temporary

restraining order); see also Taylor v. Freeman, 34 F.3d 266, 268–69 (4th Cir. 1994) (noting courts only grant injunctive relief involving the management of prisons in extraordinary circumstances).

The court now conducts its initial review under 28 U.S.C. § 1915A and, for the reasons discussed below, dismisses the complaint.

Legal Standard:

When a prisoner seeks relief in a civil action from a governmental entity or officer, a court must dismiss the complaint if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(a), (b)(1). A frivolous case "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Legally frivolous claims are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Factually frivolous claims lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325.

The standard used to evaluate the sufficiency of a pleading is flexible, and a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). A *pro se* plaintiff's pleading, however, must contain "more than labels and conclusions," see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008), and the court need not accept as true any legal conclusions or unwarranted factual inferences, see Ashcroft v. Iqbal, 556 U.S. 662, 677–83 (2009).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988);

Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Further, a plaintiff also "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

Plaintiff's Complaint:

Plaintiff generally alleges that defendants – Tabor C.I. Warden Jamie Bullard; "Deputy Secretary of Private – Institution [sic]" Pete Buchholtz; "Executive Director – D-A-C" Kimberly D. Grande; and North Carolina Attorney General Joshua H. Stein – violated his Fifth, Sixth, and Fourteenth Amendment rights at Tabor C.I. on March 8, 2024. See Compl. [D.E. 1] at 3–5.

Plaintiff specifically alleges, *inter alia*, that: he is "Ra Saadi Lenox Hernandez El. – In fact a private, living Indigenous, Moroccan American, and Beneficiary – guarantee of Trademark; Juan Carlos Hernandez Navarrete – 'Estate [sic]'" with filing numbers to this effect with Cleveland County, North Carolina, the South Carolina Secretary of State, and the Uniform Commercial Code ("UCC"); on March 8, 2024, he filed a Tabor C.I. grievance that gave "fair notice to the defendants of petitioner correct 'status' because petitioner has been wrongly identified and illegally detained / kidnapped – held hostage in Tabor. C.I. – D.A.C. [sic]"; he notified the defendants to correct his file due to "imminent substantial risks perils of petitioner physical injury or losses [sic]"; he filed a second grievance regarding his "status" that prison officials ignored; he has "a limited due process right to have erroneous and derogatory information (expunged) from institution file [sic]"; on July 4, 2024, he "filed another grievance"; he gave "fair notice of the claim or private estate [sic]"; defendants violated his due process rights "because of negligence and retaliation by threat [sic]"; defendants "owed [him] a trustee / fiduciary duty [sic]"; "defendants have absolute duty of

4

care but of defendant's res ipsa loquitur [sic]"; as to "defamation," defendants breached their duty and were negligent "because cause of false statement harming the petitioner reputation by communicated to others [sic]"; defendants' "negligence 1. Intrusion of solitude, 2. Appropriation of the petition – 'estate' name and/or likeness, 3. Public disclosure of private facts, 4. False light [sic]"; defendants breached their duty to him by not intervening; he is in serious danger of physical injury or losses because, through negligence, defendants violated 18 U.S.C. §§ 241, 242; he "has been wrongly identified and illegally detained," "kidnapped and held hostage by private foreign officials" resulting in his "assault and battery," "false arrest or imprisonment," "malicious prosecution," "intentional infliction of physical mental or emotional distress [sic]," "invasion of privacy," and "deprivation of property"; defendants' "breach[ ] of duty caused him serious physical injury and damages"; the Warden is "responsible for the overall operation of the facility"; defendants violated his rights by not correcting or intervening "in ongoing civil and constitutional violation [sic]"; and his injury is being kidnapped and held hostage. See id. at 5–11.

For relief, plaintiff seeks: a declaration that defendants violated his "civil and constitutional [rights] and also the [Treaties] of Morocco and U.S. [sic]"; $40,000,000.00 in compensatory damages; $100,000.00 per day, plus interest, in punitive damages "for unauthorized administration and/or usage of [his] private 'ESTATE' [sic]"; "or other equitable relief or both"; and "Rescission – to extinguishment a void contract [sic]." Id. at 13.

Plaintiff attaches various documents. See Pl.'s Comp. Attach., Ex. A, [D.E. 1-1] at 1 (Mar. 2, 2024, North Carolina Department of Adult Correction ("DAC") "Step 2" grievance response that his name is correct in his judgment and commitment and with the DAC, and that his "combined sentence was found correct upon audit"); id., Ex. B, [D.E. 1-1] at 2 (July 1, 2024, DAC

5

screening response rejection of his grievance that apparently challenged his sentence and sought Federal Bureau of Prison grievance forms); id., Ex. C [D.E. 1-1] at 3 (July 8, 2024, DAC screening response rejection of his grievance as outside the scope of the remedy procedure because it "invokes original sentence information"); id. Ex. D [D.E. 1-1] at 4–5 (UCC financing statement with receipt from the South Carolina Secretary of State dated Jan. 31, 2019).

Discussion:

Plaintiff's complaint is not a model of clarity, but his claims that his present state incarceration amounts to a "kidnapping," that defendants improperly used his "Estate," and that defendants failed to recognize his Moorish American status are legally and factually frivolous. See Neitzke, 490 U.S. at 325; Adams, 40 F.3d at 75; see also Bond v. N. Carolina Dep't of Corr., No. 3:14-CV-379-FDW, 2014 WL 5509057, at *1 (W.D.N.C. Oct. 31, 2014) (finding frivolous a claim that a state inmate is held "hostage under a fictitious name"); Wright v. Brooms, No. 2:11MC03, 2012 WL 1944917, at *2 (W.D.N.C. May 30, 2012) ("The United States has not recognized the so-called 'Moorish Nation' as a sovereign." (citation omitted)), aff'd, 490 F. App'x 599 (4th Cir. 2012) (per curiam) (unpublished); McCullough v. United States, No. 3:11CV176, 2011 WL 3652332, at *2 (E.D. Va. Aug. 18, 2011) (unpublished) ("Arguments based on [the "redemptionist theory"] and other similar theories have been rejected by courts as being frivolous and a waste of judicial resources." (internal quotations and citations omitted) (collecting cases)); Headen-El v. Keller, No. 1:11CV590, 2011 WL 3568282, at *2 (M.D.N.C. Aug. 15, 2011) (collecting cases rejecting claims based upon status as a "Moorish American").

Next, because he does not name any federal actors, plaintiff does not state a viable Fifth Amendment claim. See United States v. Hornsby, 666 F.3d 296, 310 (4th Cir. 2012).

6

Plaintiff also fails to plausibly allege defendants' involvement in any violation of his Sixth Amendment rights. See Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level"); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Next, to state a cognizable claim under the Due Process Clause of the Fourteenth Amendment, plaintiff must show that government action deprived him of life, liberty, or property. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). A court "first asks whether there exists a liberty or property interest which has been interfered with by the State." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). If so, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id.

Although plaintiff alleges defendants were negligent, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Kingsley v. Hendrickson, 576 U.S. 389, 396 (2015) (citation, quotation marks, and alteration omitted); see Daniels v. Williams, 474 U.S. 327, 330 (1986); Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995).

Plaintiff's grievance-related allegations also fail to state a viable due process claim. See Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018); see also Oliver v. Gray, No. CIV A 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."), aff'd, 360 F. App'x 417 (4th Cir. 2010).

As to plaintiff's bald claim that defendants deprived him of property, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the

7

procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008). Meaningful postdeprivation remedies exist in the state courts. See Wilkins v. Whitaker, 714 F.2d 4, 6–7 (4th Cir. 1983).

To the extent he claims DAC records identify him as Carlos Hernandez despite his wish to be recognized as Ra Saadi Lennox Hernandez El, plaintiff does not allege that he legally changed his name. See Barrett v. Virginia, 689 F.2d 498, 503 (4th Cir. 1982) (noting, "the mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right"); see also Thacker v. Dixon, 784 F. Supp. 286, 287, 297 (E.D.N.C. 1991) (finding prison official's use of both inmate's committed name and legal Muslim name did not violate his First Amendment rights); cf. Ephraim v. Angelone, 313 F. Supp. 2d 569, 575 (E.D. Va.) ("When an inmate legally changes his name for religious purposes, the Department of Corrections, upon notice of such a change, is required to add the new name to the prison file." (citations omitted)), aff'd, 68 F. App'x 460 (4th Cir. 2003).

Plaintiff's "retaliation" claim also amounts to mere "labels and conclusions" insufficient to survive initial review. Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678; Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (outlining requirements for First Amendment retaliation claims), cert. denied, 138 S. Ct. 738 (2018); Booker, 855 F.3d at 540, 544; Adams, 40 F.3d at 74–75.

To the extent plaintiff instead alleges defendants violated the Fourteenth Amendment's Equal Protection Clause, his bald claims again are too threadbare to survive initial review. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; cf. City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985); Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

8

The court now considers plaintiff's claims alleging defendants' conspiracy, deprivation of rights, and purported perjury. See Compl. [D.E. 1] at 7, 9 (citing 18 U.S.C. §§ 241, 242, 1621).

Succinctly stated, plaintiff's bald allegations amount to mere "labels and conclusions," Twombly, 550 U.S. at 555, and he fails to plausibly allege either the deprivation of a constitutional right or the "meeting of the minds" elements needed for a viable civil conspiracy claim, see Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996) (requiring § 1983 plaintiff to "present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right.").

Plaintiff also lacks a constitutional right to bring criminal charges against the defendants in this action. See, e.g., Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) ("Private citizens have no constitutional or other right to a criminal investigation, nor any judicially-cognizable interest in the prosecution or non-prosecution of another." (citation omitted)).

To the extent plaintiff seeks to raise a supervisory liability claim against defendants, his bald, threadbare allegations fail to state a cognizable claim under the governing standard. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555; see Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

To the extent plaintiff instead seeks release from state custody, a writ of habeas corpus, not a civil rights action under section 1983, is the exclusive remedy for inmates seeking release from purportedly unconstitutional confinement. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

Finally, because plaintiff's complaint cannot be cured by amendment, dismissal is appropriate, see Goode v. Cent. Virginia Legal Aid Soc'y, Inc., 807 F.3d 619, 628 (4th Cir. 2015), and the court declines to exercise supplemental jurisdiction over any lingering state-law claims, see 28 U.S.C. § 1367(c)(3) (granting courts discretion to decline supplemental jurisdiction over a

pendent State claim where the court has dismissed all claims over which it has original jurisdiction); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (noting "pendent jurisdiction is a doctrine of jurisdictional discretion" and that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (holding the district court possesses "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met").

## Conclusion:

For the reasons discussed above, the court: DENIES plaintiff's premature motions for a writ of habeas corpus ad testificandum [D.E. 8], to compel arbitration [D.E. 15], and for default judgment [D.E. 19]; DENIES plaintiff's motion for injunctive relief [D.E. 12]; DENIES plaintiff's motion for copies [D.E. 18]; DENIES AS MOOT plaintiff's motion for leave to file an amended certificate of service [D.E. 14]; DISMISSES the complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1); DECLINES to exercise supplemental jurisdiction over any lingering state-law claims; and DIRECTS the clerk to close the case.

SO ORDERED this 28th day of January, 2025.

RICHARD E. MYERS II
Chief United States District Judge